PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MARIANNE JOYCE, | ) | |
| | ) | CASE NO. 1:13cv1224 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CLEVELAND CLINIC FOUNDATION, *et al.*, | ) | |
| | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Regarding ECF Nos. 28; 31] |

On May 5, 2014, assigned Magistrate Judge George J. Limbert issued an Order resolving the parties' discovery dispute.  ECF No. 28.  Plaintiff filed an objection (ECF No. 31) and Defendants responded (ECF No. 34).  The Court has been advised, having reviewed the record, the parties' briefs and the applicable law.  For the reasons that follow, the Court sustains Plaintiff's objections in part and overrules her objections in part.

## I.

Plaintiff commenced this lawsuit against her previous employer, the Cleveland Clinic Foundation ("Clinic"), then-President Joanne Zeroske, and Director of Human Resources Gloria Donnelly.  ECF No. 1-1 at 2-3, ¶¶2,4,5.  Relevant to the instant dispute are Plaintiff's discrimination claims based on disability and hostility in the workplace due to her gender, as well as retaliation for taking leave under the Family Medical Leave Act ("FMLA").  *Id*. at 11, ¶42; 12. Specifically, Plaintiff alleges that Defendants failed to investigate and properly accommodate her

(1:13cv1224)

post-traumatic stress disorder.  Plaintiff's post-traumatic stress disorder is allegedly caused by the

Clinic's retention of employee Terrell Ford, "who was convicted of criminal charges associated

with menacing and stalking of Plaintiff and the abduction of her friend." *Id*. at 3, ¶7.  While

Plaintiff was on leave pursuant to FMLA, her employment was terminated. *Id*. at 6-7, ¶20; ECF

No. 24 at 4, ¶20.

   Plaintiff seeks to compel the production of four documents that were withheld by

Defendants on the basis of attorney-client privilege— notes from a meeting and three e-mail

threads identified in the Clinic's privilege log.  ECF No. 28 at 2; ECF No. 22-1 (privilege log).

Defendants argued that the documents are privileged because they "involve communications

between in-house counsel for the Clinic and non-lawyer personnel charged with managing

Plaintiff's medical leave and with investigating and addressing claims of impropriety relative to

non-party employee Terrell Ford."  ECF No. 22 at 2.  Plaintiff argued that, "to the extent that the

documents are privileged, the Clinic has waived the privilege because the Clinic's legal

department essentially conducted the investigation of Plaintiff's concerns."  ECF No. 28 at 2.

   The magistrate judge determined that the Clinic did not waive the attorney-client

privilege.  ECF No. 28 at 5.  The order explains that courts "have repeatedly held that the

attorney-client privilege attaches to communications when a request for legal assistance is

implicit in the communication and there is an expectation or intent that the attorney would render

a legal opinion on the communication if necessary."  ECF No. 28 at 4.  Specifically, the order

found *Christie v. Alliance Imagery Inc.*, No. 5:06 CV 1430, 2007 WL 1974913, at *1 (N.D. Ohio

July 3, 2007) analogous.  ECF No. 28 at 5.  In *Christie*, a human resource department conducted

2

(1:13cv1224)

an investigation into a plaintiff's gender discrimination complaint and occasionally

communicated with the employer's in-house counsel regarding that investigation. 2007 WL

1974913, at *1. The court found that the attorney-client privilege had not been waived because

the investigation was conducted by the human resource department, and the employer had

produced over seven hundred pages of documents regarding the investigation. Id. at *2. In the

instant case, the magistrate judge conducted an in-camera review of the four documents Plaintiff

seeks, and found that:

> the meeting notes contain legal advice given by in-house counsel that attended the meeting. Likewise, the e-mail threads are privileged, to the extent that they reflect the non-lawyer personnel seeking legal advice regarding the investigation of Plaintiff's concerns, and potential accommodations upon her return to work following her FMLA leave. In addition to the attorney client privilege, the e-mail threads are also privileged based upon the work-product doctrine. Accordingly, the Clinic has not
> not discoverable.

ECF No. 28 at 6. The magistrate judge also noted:

> Defendants have produced over 1,300 pages of documents in this action, including Plaintiff's medical leave file and all non-privileged communications and notes related to Plaintiff's complaints about Mr. Ford and the Clinic's investigation of Plaintiff's concerns. Plaintiff took the depositions of six fact witnesses, including Ms. Zeroske, Ms. Donnelly, Ms. Puntel and Mr. O'Connell, and had an opportunity to inquire about their respective roles in investigating and responding to the issues raised by Plaintiff. Plaintiff therefore has had ample opportunity to discover the facts relevant to her claim, and the fact-finder will not be deprived by the absence of the four privileged documents at issue, which were made in confidence and for the purpose of obtaining legal advice and counsel.

Id. at 9.

Plaintiff objects to the magistrate judge's order, arguing that it is erroneous because it

determined that (1) Plaintiff's complaint to her co-worker in January 2009 did not constitute a

(1:13cv1224)

complaint to the Clinic; (2) the Clinic's "legal department acted merely as a liaison and did not

control the actual investigation of the January 2009 complaint"; and (3) "documents sought

concerning discussions of accommodations to Plaintiff pertained to the investigation or

administration of her FMLA."  ECF No. 31 at 4, 6, 10.

## II.

When a party objects to a magistrate judge's order on a nondispositive pretrial matter, the

district court may only reverse the magistrate judge's decision if it is "clearly erroneous or is

contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  *See also Chesher v. Allen,*

*122 Fed. App'x 184, at *2 (6th Cir. 2005); Freudeman v. Landing of Canton, 2010 WL 2836764,*

*at *1 (N.D.Ohio July 19, 2010).*

## III.

### A.  Plaintiff's January 2009 Complaint

Plaintiff contends that she first submitted a complaint regarding Terrell Ford to the Clinic

in January 2009, when she told her "trusted co-worker" Rosemary Scholti about her problems

with Ford.  Scholti, in turn, forwarded Plaintiff's complaint to the Clinic's in-house counsel

Shannon Jerse.  ECF No. 31 at 5.  It was considered an anonymous complaint.[1]  An investigation

ensued.  Plaintiff seeks Document One, handwritten notes from a March 3, 2009 meeting

---

[1]  Plaintiff states that "[a] central issue in this case is whether Plaintiff wished to be
anonymous when she made her initial report in January 2009.  The manner in which the
investigation was handled and what was done to address Ms. Joyce's concerns of a hostile work
environment and to accommodate her seems dependant on this factor."  ECF No. 31 at 3.  The
magistrate judge did not decide whether Plaintiff wished to be anonymous.  Instead, the Order
found that the Clinic treated the complaint as anonymous.  ECF No. 28 at 7.

4

(1:13cv1224)

between Jerse and Zeroske, Jackie Puntel and Michael O'Connell.  The magistrate judge

determined that the notes are protected by the attorney-client privilege and that Defendants did

not waive the privilege.  ECF No. 28 at 9.

> In her objections to the magistrate judge's order, Plaintiff argues that the order
>
> focused on the belief that the investigation of this January 2009 report was before
> Ms. Joyce made her complaint to the CCF, which is not the case.  This incorrect
> focus suggests why the determination that documents and information in this
> investigation – "Notes from meeting with in house counsel regarding strategy for
> addressing anonymous complaint about Terrell Ford[]" is privileged.

ECF No. 31 at 6.  Regardless of whether the January 2009 report is considered a complaint to the

Clinic, this fact alone does not render the notes not privileged.  Plaintiff offers no other

explanation for her disagreement with the magistrate judge's order, and none is apparent to the

Court.

Next, Plaintiff objects to the magistrate judge's finding that the human resource

department conducted the investigation.  ECF No. 31 at 6.  The magistrate judge found that "the

legal department's involvement in the investigation served merely to provide legal advice upon

inquiry from the non-lawyer personnel vested with authority to undertake the investigation."

ECF No. 28 at 8.  Consequently, the magistrate judge determined that Document One is

privileged and that Defendants have not waived the privilege through the limited involvement of

the Clinic's legal department.  *Id*. at 9.

In her objection, Plaintiff argues that the evidence shows that the investigation was

conducted by the Clinic's legal department.  ECF No. 31 at 6-7.  She provides the Court with

deposition testimony of the Clinic's non-legal personnel—Puntel, O'Connell and

(1:13cv1224)

Zeroske—explaining their involvement in the investigation.  *Id*. at 7-8.  The testimony reveals that in-house counsel Jerse received the complaint.  She contacted O'Connell, the Vice President of Operations at Huron Hospital, and instructed him to determine if there was a background check in Ford's file.  ECF No. 33-5 at 10.  O'Connell contacted Puntel and requested she pull Ford's file.  *Id*. at 9.  Puntel did so and discovered there was no background check in Ford's file.  *Id*. at 10.  She relayed the information to O'Connell, and he passed the information on to the legal department.  *Id*.  O'Connell testified that he did not know what further action was taken regarding the matter.  *Id*.

Thereafter, in an email, Puntel requested authorization from Zeroske to run a background check on Ford, explaining that "[O'Connell] asked me to call and get a background check run." ECF No. 33-8 at 1.  Zeroske approved the background check.  *Id*.  Zeroske testified that she had no further involvement in the investigation.  She testified that "Shannon [Jerse] was handling the matter."  ECF No. 25-10 at 5.  She also testified that she never found out if an initial background check on Ford had been run "[b]ecause legal was handling it, and I figured Shannon would take care of it."[2]  *Id*.  When asked whether there was an investigation that had been  completed after she approved the background check, Zeroske testified "I'm sure there was because Shannon Jerse was involved in it.  And she would have gone further with it."  *Id*. at 6.

Puntel testified that she had no further involvement in the investigation beyond pulling the file and getting the background check authorized.  ECF No. 33-7 at 38.  She testified that

---

[2]  It is not clear if an initial background check on Ford had been run at the time he was hired and the report was not in the file, or whether a background check had never been run on Ford.  *See, e.g.*, ECF No. 25-10 at 5 (Zeroske deposition).

6

(1:13cv1224)

"[t]he legal department was contacting people to take—to manage the investigation.  They contacted Michael [O'Connell]."  *Id.* at 12.  O'Connell testified that he had no further involvement in the investigation other than instructing Puntel to check Ford's file.  ECF No. 33-5 at 12-13.

Puntel and Zeroske's testimony describes that legal was conducting the investigation. *See, e.g.*, ECF Nos. 33-7 at 12 (Puntel's deposition: "legal was handling it," agreeing that "legal was directing"); 25-10 at 5 (Zeroske's deposition: "Shannon [Jerse] was handling the matter"; "legal was handling it," agreeing that it was "out of [Zeroske's] control").  O'Connell repeatedly testified that he did not know the parameters of the investigation.  *See, e.g.*, ECF No. 33-5 at 18 ("I can only say what my part in the investigation was.  I don't know what the rest was.").

Although Defendants submit that the Clinic's legal department was merely advising the human resource department's investigation, the record is clear that Puntel, O'Connell and Zeroske received explicit and simple instructions from Jerse, which they carried out.  They reported the findings back to Jerse.  Puntel, O'Connell and Zeroske testified that they have no knowledge of further action.  *Id.* at 13, 18; 33-7 at 34; 25-10 at 5.  The evidence, therefore, does not support Defendants' contention that the investigation was conducted by non-legal personnel. Instead, the evidence supports Plaintiff's argument that the legal department was conducting the investigation.

There is no evidence of "give-and-take communications" between legal counsel and human resource personnel.  *See Wilkinson v. Greater Dayton Reg'l Transit Auth.*, 2014 WL 953546, at *3 (S.D.Ohio March 11, 2014) ("give-and-take communications" between legal

7

(1:13cv1224)

counsel and defendant protected by the attorney-client privilege).  Nor is there evidence that the human resource department occasionally consulted with in-house counsel for legal advice or made employment decisions.  *See Christie*, 2007 WL 1974913, at *1 ("Defendant's investigation was conducted by a member of its Human Resources Department, who, upon occasion consulted with in-house counsel for legal advice.  Defendant's attorneys did not make any of the employment decisions involved in this case." (internal quotation marks and citation omitted)).  Instead, the Clinic's legal department conducted the investigation and occasionally enlisted non-legal personnel to carry out simple, administrative tasks.

Because the legal department conducted the investigation into the January 2009 complaint, the notes taken during the March 3, 2009 meeting between Jerse, Puntel, O'Connell and Zeroske are discoverable.  Plaintiff's objections to the magistrate judge's order regarding the attorney-client privilege pertaining to Document One are sustained.

### B.  Documents Concerning Discussions of Accommodations

Plaintiff contends that the "Order is erroneous in the determination that documents sought concerning discussions of accommodations to Plaintiff pertained to the investigation or administration of her FMLA."  ECF No. 31 at 10.  Plaintiff explains that:

> [i]n several instances in the Magistrate's [Judge's] Order, [he] states that a party does not waive attorney-client privilege when its in-house legal department investigates its employee's FMLA leave. The identification of the documents in question do not involve the investigation or administration of Ms. Joyce's FMLA.

*Id*.

At the time the emails that Plaintiff seeks were sent, Plaintiff was on FMLA leave.  The magistrate judge, after conducting an in-camera review, found that

8

(1:13cv1224)

> the e-mail threads are privileged, to the extent that they reflect the non-lawyer
> personnel seeking legal advice regarding the investigation of Plaintiff's concerns,
> and potential accommodations upon her return to work following her FMLA
> leave.  In addition to the attorney-client privilege, the e-mail threads are also
> privileged based upon the work-product doctrine.  Accordingly, the Clinic has not
> waived the privilege, and, therefore, the documents at issue are not discoverable.

ECF No. 28 at 6.  Although Plaintiff describes to the Court why it seeks these documents, she does not explain why the documents are discoverable notwithstanding the attorney-client privilege or the work-product doctrine.  The passage cited above does not reflect that the magistrate judge determined that the documents pertained to the investigation or administration of Plaintiff's  FMLA leave, as Plaintiff alleges.  In short, Plaintiff has not shown that the magistrate judge's order pertaining to Documents Two, Three, and Four are clearly erroneous or contrary to law.  *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  Plaintiff's objections are overruled.

## IV.

For the reasons explained above, the Court sustains Plaintiff's objections as to Document One, the notes taken at the March 3, 2009 meeting.  Document One is discoverable and shall be produced within two (2) days after the issuance of this Order.  The Court overrules Plaintiff's objections as to the remaining documents.


IT IS SO ORDERED.


 September 29, 2014                        */s/ Benita Y. Pearson*
Date                                      Benita Y. Pearson
                                          United States District Judge

9